## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

RUSSELL MCKNIGHT,                )
                                 )
      Plaintiff,                 )     NO.  3:08-00153
                                 )     JUDGE HAYNES
v.                               )
                                 )
DILLARD'S, INC.,                 )
                                 )
      Defendant.                 )

## M E M O R A N D U M

Plaintiff, Russell McKnight, filed this action originally in the Circuit Court of Rutherford

County, Tennessee against the Defendant Dillard's Inc., for retaliatory discharge and racial

discrimination.  The Defendant removed the action to this Court and the parties agreed to submit

their disputes to arbitration[1].  After an evidentiary hearing, the arbitrator found for the Defendant.

Plaintiff then filed this action under Tenn. Code Ann. § 29-5-313(b) and 29-5-314(c) and the

Federal Arbitration Act 9 U.S.C.A. § 10(a) (199) and moves to vacate or set aside the arbitrator's

decision.  In sum, Plaintiff asserts that the selection procedures for the arbitrator was improperly

changed at the Defendant's request after an arbitrator had been properly selected under the stated

arbitration procedure and that the arbitrator who was improperly selected, rejected and failed to

consider Plaintiff's racial discrimination claim that was the subject of the Plaintiff 's complaint

in the state court and his demand for arbitration.

The Defendant contends that in sum: (1) that proper procedures were employed to select

the arbitrator; (2) that Plaintiff waived any objection to the selection of the arbitrator by failing to

---

[1]McKnight v. Dillard's, 3:05cv0035 (Complaint filed Jan. 18, 2005 and dismissed March
10, 2005)(Trauger, D.J.)

file a written objection; and (3) that after hearing some proof, the arbitrator properly excluded

Plaintiff's claim of racial discrimination. (Docket Entry No. 2, Defendant's Response).

### A. Review of the Arbitration Record

As to selection of an arbitrator, the parties' arbitration agreement provides as follows:

### SELECTION AND APPOINTMENT OF THE ARBITRATOR

You and the Company will receive a list of seven neutral arbitrators from the AAA who have expertise in employment law and are licensed to practice law. The AAA, to the extent possible, will provide lists which include a divers group of arbitrators.

You and the Company agreed on an arbitrator from that list. If you do not find the first list acceptable, you can request a second or third list.. If the first two lists are rejected, an arbitrator must be selected from the third and final list.

**The parties will select the arbitrator by exercising alternating strikes with the party requesting arbitration striking first until only one arbitrator remains on the list. If either party fails or refuses to exercise its strikes, the other party selects the arbitrator**. Once an arbitrator is selected, the Company will notify the AAA.

The arbitrator cannot have any personal or financial interest in the dispute. **Before accepting the appointment, the arbitrator will be required to disclose to the AAA any information which may prevent a prompt hearing or create an appearance of bias. If any such information is presented to the AAA, the AAA will communicate that information to you and the Company.**

(Docket Entry No. 2-1, Rules of Arbitration at p. 4) (emphasis added).

On May 25, 2006, the AAA provided the parties a list of seven potential arbitrators .

(Docket Entry No. 2-2, p. 1). This list included the following language: "In accordance with the

Dillard's Dispute Resolution Employment Plan, the parties are to alternatively strike names with

the party requesting arbitration striking first." This notice also stated that "[i]f you do not find

the first list acceptable, you can request a second or third list. If you wish to reject the first or

2

second list, you must notify the Company or the AAA within 15 days of the date the list was set

or you waive your right to rejection. Upon notification of the arbitrator selected by both partes,

the AAA will appoint pursuant to the Rules." (Docket Entry No. 2-2 , Notice at p. 1).

In addition, the Dillard's arbitration plan described its governing rules that as pertinent

here, provide as follows:

### SCOPE

1. These Rules of Arbitration govern procedures in the arbitration of all covered
disputes. The Company and the Associate agree that the procedures provided in
these Rules will be the sole method used to resolve any covered dispute between
them......

\* \* \*

3. Unless these rules provide otherwise, any arbitration will be conducted
according to the most current Employment Dispute Resolution Procedures of the
American Arbitration Association (AAA).

4. **If there is a difference between these rules and the AAA Employment
Dispute Resolution, these rules will apply.** The parties agree that the Company
operates in may states in interstate commerce. Therefore, it is agreed that Federal
Arbitration Act, 9 U.S.C. § 1 et seq. shall apply to these rules and govern the
arbitration.

5. Procedures not addressed by these rules or the AAA Employment Dispute
Resolution Procedures will be resolved by agreement of the parties. If the parties
are unable to agree, the procedural issue will be determined by the arbitrator.

(Docket Entry No. 2-1, Rules at p.1) (emphasis added). In another category entitled "Waiver of

Procedures," Dillard's arbitration plan provides: "If you or the company believe any of these

proceedings have not been followed, you must promptly object or you will waive your

objections." Id. at p. 7.

From June 6 through 9, 2006, each party alternatively struck three names from the first

list of arbitrators. Id. at pp. 2-3. The remaining arbitrator was Barbara Moss. Id. On June 20th,

3

Dillard's sent its objection to Moss, as the arbitrator to the AAA. (Docket Entry No. 2, Exhibit C at p.1). For its objections, Dillard's cited Rule 11(a) of the National Rules of Resolution of Employment Disputes. Id. Dillard's sought Moss's disqualification as the arbitrator citing her prior ruling against Dillard's in another arbitration that Dillard's was appealing; her prior representation of a Dillard subsidiary several years ago; and Moss's prior role as an adversary in another action against Dillard's that is not well defined. Id. at pp.2-3. The AAA removed Moss "after careful consideration of the parties' contentions" and sent a second list of arbitrators. (Docket Entry No. 2, 4, Exhibit D at p. 1).

By letter dated August 16, 2006, Plaintiff's counsel again objected to Moss's disqualification, stating "that Barbara Moss was removed as an arbitrator in this matter after being appropriately qualified and selected in the first round of arbitration selection." (Docket Entry No. 1-1). In this letter, Plaintiff expressly reserved his right to "appeal" "Moss's removal," but engaged in the second selection process for an arbitrator. Id.

As to the arbitrator's rejection of Plaintiff's racial discrimination claim, in his demand for arbitration, the Plaintiff described this claim as follows: "Plaintiff alleges the Defendant Employer wrongfully and maliciously terminated the Plaintiff in retaliation for pursing workers compensation benefits. Plaintiff also alleges racial discrimination in violation of the Tennessee Human Rights Act pursuant to T.C.A. Sec. 4-21-301, et seq.....". (Docket Entry No.1, Motion at p. 2). The record before the Court does not reflect the actual statement that Plaintiff submitted, but Plaintiff's motion quoted the language in his demand for arbitration. (Docket Entry No.1, Motion at p. 2).

This arbitration was conducted under the "Dillard's Employee Dispute Resolution Plan"

4

(Docket Entry No. 2-2 at p. 1) and that Plan describes the requirements for statement of a

Plaintiff's claim for the arbitration:

### WHAT IS COVERED

Discrimination or harassment on the basis of race, sex, religion, national origin, age disability or other unlawful bases (for example, in some jurisdictions, protected categories include political affiliation, familial status or sexual orientation).

* * *

### STEP 2 Arbitration

Complete the Notice of Intent to Arbitrate form sent to you with the Company's response to the Internal Review step, or if you use your own letter, include a statement describing:

- The nature of the dispute, the date the disputed act occurred and summary of the factual and general legal basis for the claim.

(Docket Entry No. 2-1, Rules of Arbitration at pp. 2, 3).

At the arbitration proceeding, the arbitrator initially had the following colloquoy

with the parties' counsel about the timeliness of the Plaintiff's discrimination claim.

**THE ARBITRATOR**: Let me ask a couple of questions. Going back to your contention of the statute of limitations, tell me again what claim you think are "arbitratable" or timely. I understand you say the workers' comp retaliation. And then the discharge?

**MR. LEWIS**: Well, the workers' comp retaliation – – Let me start on the other end. The termination, the discharge, is the only matter that is properly "arbitratable". Because the statute of limitations applicable to each of the two claims which in Tennessee is a one year statute of limitations. Mr. Ireland has the authority if you like on that. The THRA claim that he brings also has a one year statute of limitations. In Tennessee that's not tolled by filing an EEOC charge or a charge with a state agency. It's a straight one year statute of limitations.

We will concede that the Plaintiff gets the benefit of the weekend in filing one year and a weekend after. I think that 's the case law, that that's still timely if it's saved by the weekend. So we say – – And, again, this is in what is in the intent to

5

arbitrate form and in his court complaint, that all that is properly before the Arbitrator is the termination. No mention of any of these other things per motion, et cetera, in either the complaint or in the notice of intent to arbitrate.

**THE ARBITRATOR**: But it's that act of discharge that is grounds for the retaliation and the wrongful discharge.

**MR. LEWIS**: Yes, sir.

**THE ARBITRATOR**: Is that your understanding, Ms. Parsley?

**MS. PARSLEY**: Yes, that the adverse employment action that came from the workers' comp retaliation was the actual termination. But we also submit that the racial discrimination claims were listed as racial discrimination in violation of Tennessee Human Rights Act in the complaint and that they didn't file anything to ask for more specific pleading or anything like that when we were still in the court system. It's general pleading. So the racial discrimination, part of that that we're claiming is the failure to promote that went all the way up to the date of termination. So we don't think that those claims are barred.

**THE ARBITRATOR**: I understand your position. Are we going to invoke the Rule as far as witnesses go?

(Docket Entry No. 2-6, Exhibit F at pp. 5-6).

Plaintiff then called several witnesses. There was testimony about Plaintiff's interest in promotions, but the only time specific reference to a promotion in 2001 at Dillard's Stones River store where Plaintiff worked. The record, however, does include testimony about other promotions without reference to specific dates. In sum, Dillard's witnesses testified that Plaintiff was terminated in December, 2003 due to his history of absences. Plaintiff filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), but that charge is not part of the record of the arbitration proceeding.

After several witnesses testified, and during Plaintiff's testimony, but before the proof was concluded, the following exchange occurred between the arbitrator and the parties' counsel:

6

**THE ARBITRATOR**: Ms. Parsley, again noting Mr. Lewis' continuing objection, I don't think that you have pled a failure to promote, having read this claim for arbitration again and in light of the Supreme Court Ledbetter ruling that you've got to specifically put the employer on notice of some type of fact of discrimination. And clearly there's no mention of promotion here so I'm going to rule that the line of questioning is irrelevant.

**MS. PARSLEY: I think the EEOC charge specifically mentioned promotion, but we obviously respect your ruling.**

**THE ARBITRATOR: Well, I don't think that's in evidence.**

**MS. PARSLEY: No, it's not been. But notice - -**

**THE ARBITRATOR: There is no mention of anything regarding a failure to promote before me today under anything I've seen.**

**MR. LEWIS**: Just, if I may, neither the complaint that was filed or the intent to arbitrate says anything about promotion. The fact that it may have been mentioned in the EEOC charge is not part of this proceeding at all. There's not jurisdiction to litigate that issue and that was the reason for our original objection.

**MS. PARSLEY**: I understand the EEOC charges. I mean my understanding of discrimination is that he has to show that an adverse employment action happened. And he alleged racial discrimination in general through the complaint hand the adverse employment action that happened as a result of the racial discrimination was that he wasn't promoted.

**THE ARBITRATOR**: Now, that's not in - - I disagree with you. **There's not mention of promotion here and you've got to specifically plead failure to promote. And it's not in the demand for arbitration, and as far as I'm concerned I'm bound by as far as the issue of arbitrability and my ruling is that failure to promote is not arbitrable.**

Id. at pp. 187-89 (emphasis added).

### B. Conclusions of Law

With the Federal Arbitration Act, ("FAA"), Congress established a policy to recognize

and enforce arbitration agreements. 9 U.S.C. § 4. As the Supreme Court stated:

7

The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

Moses H. Cone Memorial v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983) (footnote omitted.

The Supreme Court explained that a strong presumption exists to enforce arbitration

provisions.

Bremen and Scherk establish a strong presumption in favor of enforcement of freely negotiated contractual choice-of-forum provisions. Here, as in Scherk, that presumption is reinforced by the emphatic federal policy in favor of arbitral dispute resolution.

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985).

In the Sixth Circuit, the "well established [rule is] that courts should pay a limited role in

reviewing the decisions of arbitrators." Dawahare v. Spencer, 210 F.3d 666, 669 (6th Cir. 2000)

(citing Shelby County Health Care Corp. v. A.F.S.C.M.E., Local1733, 967 F.2d 1091, 1094 (6th

Cir. 1992)). "The Federal Arbitration Act presumes that arbitration awards will be confirmed,"

Dawahare, 210 F.3d at 669, and that Act provides that federal courts may only set aside

arbitration awards under certain statutory bases:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration

(1) Where the award was produced by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, **or in refusing to hear evidence pertinent and material to the controversy; or**

8

**of any other misbehavior by which the rights of any party have been prejudiced.**

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C. § 10(a) (emphasis added). A federal court "may also vacate arbitration award that was rendered 'in manifest disregard of the law.'" Glennon v. Dean Witter Reynolds, Inc., 83 F.3d 132, 136 (6th Cir. 1996) (citations omitted).

As to the Plaintiff's claim on the improper selection of the arbitrator, " the power and authority of arbitrators in an arbitration proceeding is dependent on the provisions under which the arbitrators were appointed." Szuts v. Dean Witter Reynolds, Inc., 931 F.2d 830, 831 (11th Cir.1991). The FAA expressly provides that where a method for appointment is defined in the arbitration agreement, that method of appointment "shall be followed." 9 U.S.C. § 5. Under the latter statute, "[a]rbitration awards made by arbitrators not appointed under the method provided in the parties' contract must be vacated." Cargill-Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos, 25 F.3d 223, 226 (4th Cir.1994). Accord, R.J. O'Brien & Assoc., Inc. v. Pipkin, 64 F.3d 257, 263 (7th Cir.1995) ("[I]n order to enforce an arbitration award, the arbitrator must be chosen in conformance with the procedure specified in the parties' agreement to arbitrate"); Avis Rent A Car Sys., Inc. v. Garage Emp. Union, Local 272, 791 F.2d 22, 25 (2d Cir.1986)[2] ( "Courts generally enforce [selection clauses] strictly, vacating awards entered by

---

[2]In an unpublished decision, the Sixth Circuit cited Cargill-Rice, approvingly, but decided the issue on other grounds. Int'l Brotherhood of Teamsters v. Dean, 1992 WL 163251 (6th Cir.

9

arbitrators whose qualifications or method of appointment fail to conform to arbitration clauses."); Yet,, "a 'trivial departure' from the parties' agreement, however, may not bar enforcement of an award." Pipkin, 64 F.3d at 263 (quoting Avis Rent A Care System v. garage Employees Union, 791 F.2d 22, 25 (2d Cir. 1986).

From the Court's review, Dillard's arbitration agreement does not provide for an objection or motion to disqualify an arbitrator who remains after the parties exercised their strikes from the AAA's first list of seven arbitrators. As to any disqualification of an arbitrator who remains after the parties exercised their strikes, Dillard's arbitration agreement provides: "Before accepting the appointment, the arbitrator will be required to disclose to the AAA any information which may prevent a prompt hearing or create an appearance of bias. If any such information is presented to the AAA, the AAA will communicate that information to you and the Company". (Docket Entry No. 2-1, Rules of Arbitration at p. 4). Thus, under Dillard's rules, if Moss, as the only arbitrator remaining after the parties' exercises of the strikes, had any bias, Moss had to disclose any such matters to the AAA for the AAA's ultimate determination. This is the same process under national arbitration rules. See Commonwealth Coatings Corp. v. Continental Cas. Co., 393 U.S. 145, 149 (1968) (vacating arbitration award where neither arbitrator nor party did not disclose their close financial relationship quoting the Rules of the American Arbitration Association). The Court concludes that the Dillard's did not adhere to the selection procedure in its arbitration agreement for the disqualification of Moss and in doing so, Dillard's unilaterally supplemented its own rules to secure Moss's disqualification.

_____

July 14, 1992)(failure to exhaust contractual remedies).

10

For its objection, Dillard's cited Rule 11(a) of the National Rules of Resolution of Employment Disputes. (Docket Entry No. 2, Exhibit C at p.1). Yet, Dillard's arbitration plan clearly states that " 4. If there is a difference between these rules and the AAA Employment Dispute Resolution, these rules will apply....". (Docket Entry No. 2-1, Rules at p.1). As reflected in the AAA's directive, Dillard's Plan governed the selection procedure for this arbitration. Thus, given Dillard's Plan's specific rule on selection of an arbitrator, Dillard's was foreclosed by its own Plan from relying on Rule 11(a) of the National Rules of Resolution of Employment Disputes. With Dillard's express rule on this selection process, the Court concludes that the AAA rule that Dillard's cited for its objection to Moss, is inapplicable.

Moreover, as the AAA stated on May 25th notice of its initial list of arbitrators: "In accordance with the Dillard's Dispute Resolution Employment Plan, the parties are to alternatively strike names with the party requesting arbitration striking first." (Docket Entry No. 2-2 , Notice at p. 1). The AAA also stated that "[i]f you do not find the first list acceptable, you can request a second or third list. **If you reject the first or second list, you must notify the Company or the AAA within 15 days of the date the list was sent or you waive your right to rejection.** Upon notification of the arbitrator selected by both parties, the AAA will appoint pursuant to the Rules." Id. (emphasis added).

Given that Dillard's did not strike Moss from the first list of arbitrators, Dillard's knew that in effect, the entire first list of arbitrators would be unacceptable. Yet, Dillard's waited almost a month after receiving the first list of potential arbitrators to request the rejection of Moss as an arbitrator and in effect, the entire first list of arbitrators. Under Dillard's rules, the party's failure to strike the first list or timely request a second list constitutes a waiver of any

11

objection to the arbitrator chosen. Contrary to the AAA's directive and despite the presence of Moss as a potential arbitrator, Dillard's did not state that the first list of potential arbitrators that was sent on May 26th, was unacceptable within 15 days deadline after receipt of the first list. Dillard's did not object to Moss's selection until June 20th. Dillard's also had three opportunities to strike Moss, if Dillard's deemed her objectionable. The Court concludes that Dillard's effectively waived any objection to Moss.

As to Dillard's contention that Plaintiff waived any objection to Moss's disqualification, the AAA's letter announcing Moss's disqualification reflects that Plaintiff opposed her disqualification. " (Docket Entry No. 2-3 at p. 1). In addition, by letter dated August 16th, Plaintiff expressly stated his objection to Moss's disqualification and the reservation of his right to raise her disqualification on any appeal. Plaintiff agreed to the second list of arbitrators to secure an arbitration. (Docket Entry No. 1-1). Thus, the 15 days deadline in the AAA letter did not apply and there is not any specific time limit to objections in Dillard's rule on waiver upon which Dillard's relies. This contention lacks merit.

Assuming Dillard's could object to Moss, notwithstanding its own rules, the issue would remain whether Dillard's specific objections could disqualify Moss as the arbitrator. In this Circuit, the appropriate test is whether "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." Nationwide Mut. Ins. Co. v. Home Ins. Co.. 429 F.3d 640, 645 (6th Cir. 2005). For this determination, Dillard's must set forth "specific facts that indicate an improper motive." Anderson Inc. v. Horton, 166 F.3d 308, 329 (6th Cir, 1995). The party seeking disqualification must make a factual showing that is "more than an amorphous institutional disposition toward the other side". Id. Mere "appearance of bias" is legally

12

insufficient. Id.

Here, Moss's alleged prior representation of Dillard's subsidiary did not affect her participation as an arbitrator in Dillard's prior arbitration proceeding. There is not any showing that Dillard's objected to her selection in that proceeding. The reference to Moss as prior adversary counsel is countered by Moss's prior representation of Dillard's subsidiary. In any event, the mere fact that an arbitrator was once an adversary counsel, at best, gives the appearance of bias, but that without more, is legally insufficient under Nationwide and Anderson. Moreover, the record of the arbitration proceedings, does not reflect that Moss ever had an opportunity to address this issue, as provided by Dillard's arbitration procedure. The AAA disqualified Moss based upon "the parties' contentions." (Docket Entry No. 2-3 at p. 1). The disqualification of Moss, as the arbitrator is not a "trivial" matter that excuses Dillard's noncompliance with its own rules.

As to Plaintiff's Title VII claim, Title VII requires a Plaintiff to exhaust administrative remedies before pursing a legal action by filing an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). 42 U.S.C. § 2000e-(5)(b) and (e)(1). Once that administrative process is completed, the Title VII Plaintiff can file his or her action. Once the action is filed, the scope of the legal action extends to any matter in the administrative charge or that is reasonably related to the administrative charge. Abeita v. Transamerica Mailings, Inc., 159 F3d 246, 254 (6th Cir. 1998).

Here, Plaintiff filed an administrative charge with the EEOC that was served upon the Defendant, but a copy of that charge is not in the record of the arbitration proceeding. The Plaintiff's notice of his arbitration claim expressly mentions his racial discrimination claim, but under state law. Plaintiff's state court complaint purportedly gave notice of the Plaintiff's racial discrimination claim that the parties agreed to submit for arbitration. From the Court's review,

the record is inadequate to assess whether the arbitrator's decision was based upon a pleading

requirement under the arbitration rules or that under federal law cited by the arbitrator, Plaintiff's

racial discrimination claim under state law was timed barred. In any event, that issue can be

presented in a clearer manner at the arbitration hearing required by this Court's order.

For the above-stated reasons, the Court concludes that Plaintiff's motion to vacate should

be granted.

An appropriate Order is filed herewith.

Entered this the _16th_ day of September, 2008.

William J. Haynes, Jr
United States District Judge.